Louis H. HOPSON, et al., Plaintiffs,

v.

The MAYOR AND CITY COUNCIL OF BALTIMORE, A Municipal Corporation of the State of Maryland, and the Baltimore City Police Department, Defendants.

No. CIV.A. AMD–04–3842.

United States District Court, D. Maryland.

Nov. 22, 2005.

---

Peter D. Isakoff, Kristin King Brown, Lisa R. Fine, Weil Gotshal and Manges LLP, Susan E. Huhta, Washington, DC, Robert L. Smith, Jr., Law Office of Robert L. Smith Jr. LLC, Baltimore, MD, for Plaintiffs.

Ralph S. Tyler, Elizabeth F. Harris, Joshua Neal Auerbach, Karen Stakem Hornig, Baltimore City Law Department, Baltimore, MD, for Defendants.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

This case has been referred to me for resolution of all discovery disputes. Paper no. 27. Pending and ripe for a decision is the Plaintiffs' motion to compel Rule 33 and 34 discovery. Papers No. 26, 29, and 30. Plaintiffs have asserted putative class claims and individual claims against the City of Baltimore ("The City") and the Baltimore City Police Department ("BCPD") alleging that BCPD engaged in racial discrimination against African American police officers in connection with the administration of the disciplinary system for Baltimore police officers. It is alleged that the disparate impact and disparate treatment claims extend back to 1992, the commencement date for the misconduct that is the focus of the class claims.

When the court issued its scheduling order and discovery commenced, Plaintiffs promptly served interrogatories and document production requests on the Defendants. The Rule 34 requests were extensive and clearly sought both "hard copy" records as well as electronically stored records and data. Companion interrogatories included more than 15 specifically designed to discover the nature, extent, and location of electronically stored records, the Defendants' IT capabilities, the nature of archived data, e-mail, and records retention policies—in short, all of the computer generated information that is the subject of so much discussion these days.

Defendants answered, raising many objections to the discovery sought, including burdensomeness and expense. Many of their objections, however, were boilerplate, general objections, rather than specific ones, as required by Fed.R.Civ.P. Rule 33(b)(4) and Rule 34. *See Hall v. Sullivan*, 231 F.R.D. 468 (D.Md.2005). Plaintiffs and Defendants met and corresponded in an unsuccessful attempt to resolve the discovery disputes without involving the court. Plaintiffs then followed the procedures outlined in Local Rule 104.8, the issues were fully briefed and, when last efforts to work out their differences failed, the motion and responsive memoranda were filed. To support their objections based on burden and expense, which largely had been unparticularized in their initial written responses, Defendants attached the affidavit of the BCPD's IT manager, Mr. Michael Roosa. Paper No. 30, Attachment A. Although this affidavit was a welcome addition to the prior conclusory assertions of burden, and did demonstrate the limited number of IT specialists working for the BCPD and the many competing demands for their services, it still fell short of what would be necessary for a proper application of the cost-benefit analysis required by Rule 26(b)(2) to enable the court fairly to tailor the discovery allowed in this particular case. Absent, for example, was any estimate of the number of hours and or costs that would have to be expended in order to comply with the Plaintiffs' discovery requests.

On November 9, 2005, a hearing was held in open court. One of the Defendants' concerns was the cost and burden of performing pre-production privilege review of the records sought by the Plaintiffs. I ruled on many of the Rule 34 requests, and also ordered the parties to pursue through other methods, discovery into the Defendants' electronically stored information. Specifically, because the parties had not met in an effort to agree upon a reasonable discovery plan for electronic discovery, I ordered Defendants, along with Mr. Roosa, to meet with Plaintiffs and their IT representative to consult in good faith in an effort to informally discover sufficient information about the Defendants' IT systems and electronic records to agree upon a proposed discovery plan to submit to the court for review and approval. I further ordered the parties to discuss the Rule 26(b)(2) factors in connection with the procedures that Defendants reasonably should take to perform a review for privilege and work product claims, given the nature of the litigation, the long time period for which the records were sought, and the resources of the parties. I ordered this conference to take place within 30 days, after which a follow-up hearing would be scheduled, during which I would approve a discovery plan and issue an order implementing it.

During the November 9th hearing, I noted that the issues presented in this case prominently showcase challenges that recur in connection with the discovery of electronic data, which are the subject of the proposed amendments to the Federal Rules of Civil Procedure that were approved in September 2005 by the Judicial Conference of the United States and forwarded to the United States Supreme Court for adoption, and referral to Congress for its approval. Specifically, this case highlights significant unresolved issues relating to the nature of privilege review that must be performed by a party producing electronically stored information, whether non-waiver agreements entered into by counsel to permit post-production assertion of privilege are permissible, and effective for their intended purpose, as well as the application of principles of substantive evidence law related to the waiver of privilege by inadvertent production. These issues, among the most talked about by lawyers, judges, and the parties who are

affected by their resolution, have yet to be fully developed by the courts. And, in this regard, there is no controlling precedent in the Fourth Circuit or this District to guide counsel and clients in this important and potentially hazardous aspect of discovery. I explained to counsel that I intended to supplement my oral ruling with a memorandum and order addressing these issues. This memorandum does so.

■ This case vividly illustrates one of the most challenging aspects of discovery of electronically stored information—how properly to conduct Rule 34 discovery within a reasonable pretrial schedule, while concomitantly insuring that requesting parties receive appropriate discovery, and that producing parties are not subjected to production timetables that create unreasonable burden, expense, and risk of waiver of attorney-client privilege and work product protection. In the absence of procedural rules tailored to ameliorate this problem, parties and courts have begun to adopt[1] innovative methods of addressing it. As noted in the Federal Judicial Center Manual for Complex Litigation:

> A responding party's screening of vast quantities of unorganized computer data for privilege prior to production can be particularly onerous in those jurisdictions in which inadvertent production of privileged data may constitute a waiver of privilege as to a particular item of information, items related to the relevant issue, or the entire data collection. Fear of the consequences of inadvertent waiver may add cost and delay to the discovery process for all parties. Thus, judges often encourage counsel to stipulate at the outset of discovery to a "nonwaiver" agreement, which they can adopt as a case-management or-

der. Such agreements protect responding parties from the most dire consequences of inadvertent waiver by allowing them to "take back" inadvertently produced privileged materials if discovered within a reasonable period, perhaps thirty days from production.[2]

Similarly, the recent report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United States and the Members of the Judicial Conference of the United States that forwarded proposed revisions to Federal Rules of Civil Procedure 16, 26, 33, 34, and 37, addresses this same issue:

> The problems that can result from efforts to guard against privilege waiver often become more acute when discovery of electronically stored information is sought. The volume of the information and the forms in which it is stored make privilege determinations more difficult and privilege review correspondingly more expensive and time-consuming, yet less likely to detect all privileged information. Inadvertent production is increasingly likely to occur. Because the failure to screen out even one privileged item may result in an argument that there has been a waiver as to all other privileged materials related to the same subject matter, early attention to this problem is more important as electronic discovery becomes more common. Under the proposed amendments to Rules 26(f) and 16, if the parties are able to reach an agreement to adopt protocols for asserting privilege and work-product protection claims that will facilitate discovery that is faster and at lower cost, they may ask the court to include such arrangements in a case-management or other order.[3]

---

1. "It has become increasingly common to see parties enter into agreements to disclose privileged materials provided the disclosure is not taken to entail waiver as to all privileged matters. Because courts will give effect to such agreements, the parties by contract, so to speak, can avoid the general rule that partial disclosure on a given subject mater will bring in its wake total disclosure." Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine*, 287–88 (4th ed.2001).

2. *Manual for Complex Litigation*, § 11.446, at 80, (Stanley Marcus, et al. eds., Federal Judicial Center 4th ed.2004).

3. *Report to the Standing Committee on Rules of Practice and Procedure, Judicial Conference of the United States by the Advisory Committee on the Federal Rules of Civil Procedure*, September 2005 at 27. In September, 2005, the Judicial Conference of the United States approved the proposed changes for submission to the Supreme Court, and recommended their adoption and that they be submitted to Congress for approval.

The commentary to the proposed changes to Rules 16(b) and 26(f) similarly states:

> Rule 16(b) is also amended to include among the topics that may be addressed in the scheduling order any agreements that the parties reach to facilitate discovery by minimizing the risk of waiver of privilege or work-product protection. Rule 26(f) is amended to add to the discovery plan the parties' proposal for the court to enter a case management or other order adopting such an agreement. The parties may agree to various arrangements. For example, they may agree to initial provision of requested materials without waiver of privilege or protection to enable the party seeking production to designate the materials desired or protection for actual production, with the privilege review of only those materials to follow. Alternatively, they may agree that if privileged or protected information is inadvertently produced, the producing party may by timely notice assert the privilege or protection and obtain return of the materials without waiver. Other arrangements are possible. In most circumstances, a party who receives information under such an arrangement cannot assert that production of the information waived a claim of privilege or of protection as trial-preparation material.[4]

In addition, the proposed changes to Rule 26(b)(5) would allow a party to raise post-production claims of privilege and work product protection for electronically stored information, and further establish a procedure for resolving disputes regarding such an assertion. The commentary for this proposed rule change again notes the longstanding com-plaint that the delay and expense associated with privilege review for electronic records is excessive.[5] The proposed rule changes appear to be ideal, were it not for the following cautionary language in the comment:

> The proposed amendment does not address the substantive questions whether privilege or work product protection has been waived or forfeited [by the procedures in the proposed amendment to Rule 26(b)(5) ]. Instead, the amendment sets up a procedure to allow the responding party to assert a claim of privilege or of work-product protection after production.... It is a nod to the pressures of litigating with the amount and nature of electronically stored information available in the present age, a procedural device for addressing the increasingly costly and time-consuming efforts to reduce the number of inevitable blunders ... [Proposed] Rule 26(b)(5)(2) does not address whether the privilege or protection that is asserted after production was waived by the production. The courts have developed principles to determine whether, and under what circumstances, waiver results from inadvertent production of privileged or protected information.[6]

■ Thus, after nearly ten years of extensive study[7] of the discovery rules by the Advisory Committee on the Federal Rules of Civil Procedure, the procedures proposed to address the burdens of privilege review associated with production of electronically stored information surely would ameliorate them, but at the price of risking waiver or forfeiture of privilege/work product protection,[8] depending on the substantive law of the

---

4. *Report to the Standing Committee on Rules of Practice and Procedure, Judicial Conference of the United States by the Advisory Committee on the Federal Rules of Civil Procedure,* September 2005 at 26.

5. *Id.* at 52.

6. *Id.* at 52, 56.

7. *Id.* at 52.

8. Although it is customary during Rule 34 discovery to assert simultaneously attorney-client privilege and work product protection, the two doctrines are distinct, and what is required to effect a waiver of the attorney-client privilege is not the same for waiver of work product protection. In fact, the attorney-client privilege may be waived more easily than work product protection. *See Nutramax Laboratories, Inc. v. Twin Laboratories, Inc.,* 183 F.R.D. 458, 463–64 (D.Md.1998); *In re Martin Marietta Corp.,* 856 F.2d 619, 623–24 (4th Cir.1988).

For purposes of this case, it is not necessary to distinguish what is needed to effect a waiver of the attorney-client privilege from waiver of work product protection. Since attorney client protection is waived more easily than work product protection, procedures that protect against waiver of the former will, *a fortiori,* prevent against waiver of the latter.

jurisdiction in which the litigation was pending. Absent a definitive ruling on the waiver issue, no prudent party would agree to follow the procedures recommended in the proposed rule. And, as already noted, parties, with the apparent encouragement of courts,[9] have been using these procedures even in advance of the adoption of rule changes authorizing them.

Within the Fourth Circuit, however, no case has been found that would provide definitive guidance to practitioners and their clients whether the procedures proposed by the recommended changes to the discovery rules and apparently being utilized at present by counsel, would waive attorney-client privilege or work product protection. As will be seen, forecasting the answer to this important question is not as easy as might be desired.

The changes recommended to Rules 16 and 26 encourage the party receiving the electronic discovery to agree not to assert waiver of privilege/work product protection against an opposing party that agrees to provide expedited production of electronically stored information without first doing a full-fledged privilege review. Similar agreements have been approved by a number of courts in the past. *See Zubulake*, 216 F.R.D. at 290 (see quote at n. 9); *VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8 (D.Mass.2000) (District court approved stipulation between counsel governing non-waiver of inadvertently produced privileged documents); *Ames v. Black Entm't Television*, No. 98CIV0226, 1998 WL 812051, at *1 (S.D.N.Y. Nov.18, 1998). ("Lee did not waive [the attorney-client] privilege, even though she answered certain questions about Ebron's alleged affair, because the parties agreed at her deposition that she could answer selected questions and those answers would not be deemed a waiver of any privileges."); *Dowd v. Calabrese*, 101 F.R.D. 427, 439 (D.D.C. 1984) ("Plaintiffs' waiver theory fails for yet another reason. Counsel for the parties stipulated in the course of the O'Donnell deposition that testimony by the witness would not be deemed to constitute any waiver of the attorney-client or work product privileges. In view of that stipulation, plaintiffs cannot now rely on the O'Donnell deposition to support a claim of waiver."); *W'ern. Fuels Ass'n, Inc. v. Burlington N'ern. R.R. Co.*, 102 F.R.D. 201, 204 (D.Wyo.1984) ("The Order of Magistrate Beaman dated April 18, 1983 states that, in order to expedite discovery herein, inadvertent production of privileged documents during the course of discovery herein shall not constitute a waiver of either the attorney-client privilege or the work product privilege. To the extent plaintiff alleges defendant waived such privileges through the production of documents during the course of discovery herein, the Court believes such prior order prevents a waiver."); *Eutectic Corp. v. Metco*, 61 F.R.D. 35, 42 (E.D.N.Y.1973) ("Prior to any discovery in this case by defendant, plaintiffs and defendant executed a protective order which contemplated a special method of discovery for the particular case and expressly provided there would be no waiver of any privilege

---

9. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y.2003) ("Indeed, many parties to document-intensive litigation enter into so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents. The parties here can still reach such an agreement with respect to the remaining seventy-two tapes and thereby avoid any cost of reviewing these tapes for privilege"); *See also* The Sedona Conference, *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, March, 2003, comment 10a, http://www.thesedonaconference.org (recommending that parties enter into non-waiver agreements to facilitate production of electronic records and that they seek court orders providing that such agreements do not constitute inadver- tent waiver of privilege/work product. The Sedona Conference identifies itself as a non-profit charitable research and education organization whose mission is facilitate education regarding "cutting edge issues" in law related topics including complex litigation. It has published recommended practices regarding electronic document production that have received widespread attention); *American Bar Association Civil Discovery Standards 31a.xiii*, amend. August 2004 (recommending that the parties participate in an initial discovery conference and recommends that at the conference they stipulate "to the entry of a court order providing that production to other parties or review by a mutually-agreed independent information technology consultant of attorney-client privileged or attorney work-product protected electronic data will not effect a waiver of privilege or work product protection").

unless expressed in writing .... If the language of the protective order is to be applied in the instant case, its requirement of express waiver would seem to preclude any argument of waiver to be implied by a particular course of conduct especially one contemplated in the order itself."); *United States v. United Shoe Mach. Corp.* 89 F.Supp. 357, 359 (D.Mass.1950) ("The defendant seasonably claimed whatever privilege it had. It did not waive its privilege by surrendering the exhibits in response to subpoenas, because it was agreed in advance by Government counsel that compliance with the subpoenas should not constitute a waiver."). *See also* Epstein, *supra*, at 287–88 ("It has become increasingly common to see parties enter into agreements to disclose privileged materials provided the disclosures are not taken to entail waiver as to all privileged matters. Because courts will give effect to such agreements, the parties by contract, so to speak, can avoid the general rule that partial disclosure on a given subject matter will bring in its wake total disclosure.").[10]

Although the use of "non-waiver" agreements presently may be growing—and if the proposed changes to the discovery rules are adopted they can be expected to increase significantly—they certainly are not risk-free. Some commentators appear to be openly skeptical of their ability to insulate the parties from waiver,[11] and even if they are enforceable as between the parties that enter into them, it is questionable whether they are effective against third-parties.[12] *See Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1426–27 (3d Cir.1991) (Agreement between litigant and DOJ that documents produced in response to investigation would not waive privilege does not preserve privilege against different entity in unrelated civil proceeding); *Bowne v. AmBase Corp.*, 150 F.R.D. 465, 478–79 (S.D.N.Y. 1993) (non-waiver agreement between producing party in one case not applicable to third party in another civil case).

The commentary to the proposed changes to Rule 26(b)(5) anticipates arguments that production of privileged/protected information under a non-waiver agreement will waive the privilege or protection, but asserts that "courts have developed principles for determining whether waiver results from inadvertent production of privileged information."[13] However, because there is no uniform position taken by the courts on whether inadvertent production waives privilege/work product protection, care must be taken to identify the controlling law in each jurisdiction. Specifically, three distinct positions have been taken by the courts: the "strict accountability" approach followed by the Federal Circuit and the First Circuit[14] (which almost always finds waiver, even if production was inadvertent, because "once confidentiality is lost, it can never be restored");[15] the lenient/ "to

---

10. Not all courts have approved non-waiver agreements between counsel. *See Koch Materials Co. v. Shore Slurry Seal Inc.*, 208 F.R.D. 109, 118 (D.N.J.2002) (Court declined to give effect to agreement between counsel that production of certain documents would not waive privilege protection because such agreements "could lead to sloppy attorney review and improper disclosure which could jeopardize clients' cases."); *Columbia/HCA Healthcare Corp.*, 192 F.R.D. 575, 577–78 (M.D.Tenn.2000) (holding that an agreement with the government to produce documents without waiving privilege/work product protection is invalid, rejecting the doctrine of "selective waiver").

11. 24 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Rules of Evidence*, Ch. 6 § 5507, 579 and 579 n. 22 (1986).

12. *Id.* at 579 ("A stipulated non-waiver may be defensible as between the two parties inasmuch as they are free to argue between themselves that certain evidence will not be used. But it is questionable whether such agreements should be effective as against third parties.")

13. Comment to proposed changes to Rule 26(b)(5) at 15. *See also* comment to proposed changes to Rule 16(b) at 3 ("Alternatively, [the parties] ... may agree that if privileged information is inadvertently produced the producing party may by timely notice assert the privilege and obtain return of the materials without waiving the privilege."); Manual for Complex Litigation, *supra*, § 11.446 (Non-waiver agreements "protect responding parties from the most dire consequences of inadvertent waiver by allowing them to 'take back' inadvertently produced privileged materiels if discovered within a reasonable period, perhaps thirty days from production.").

14. Epstein, *supra*, at 309.

15. *Id.* The District of Columbia Circuit also adheres to the strict liability approach. Saltzburg et al, *Federal Rules of Evidences Manual,*

err is human" approach, followed by the Eighth Circuit and a handful of district courts [16] (which views waiver as requiring intentional and knowing relinquishment of the privilege, and finds waiver in circumstances of inadvertent disclosure only if caused by gross negligence); [17] and the third approach, adopting a " 'balancing' test that requires the court to make a case-by-case determination of whether the conduct is excusable so that it does not entail a necessary waiver." [18]

The Fourth Circuit has not yet considered the doctrine of inadvertent disclosure of attorney client/work-product materials in the context of voluminous production during discovery in a civil case.[19] However, its discussion of the doctrine of waiver in other contexts provides useful circumstantial evidence of how they might rule.

■ In *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir.1984) the Fourth Circuit examined the attorney-client privilege and its waiver in the context of a subpoena issued to a lawyer to testify before a grand jury regarding a client's business activities. The court narrowly interpreted the privilege because its application " 'impedes [the] full and free discovery of the truth' and is 'in derogation of the public's right to every man's evidence,' " accordingly the court stated that it "is to be 'strictly confined within the narrowest possible limits consistent with its principle.' " [20] The court noted that "the essence of the privilege is that the communication was intended to be confidential" [21]

adding: "In fact, so strong is this requirement of confidentiality that it has been held that the privilege may be lost 'even if the disclosure is inadvertent' such as in some circumstances 'eavesdropping' and again, where if the privileged communication consisted of 'privileged documents,' the party did not 'take reasonable steps to insure and maintain [their] confidentiality.' " [22] The court continued: "It is not asking too much to insist that if a client wishes to preserve the [attorney client] privilege ... he must take some affirmative action to preserve confidentiality ... [t]aking or failing to take precautions may be considered as bearing on intent to preserve confidentiality. In particular, courts have consistently 'refused to apply the privilege to information that the client intends his attorney to impart to others ....' " [23] Finally, the court stated that "[a]ny disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third-party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." [24] Although one respected commentator has cited *In re Grand Jury Proceedings* for the proposition that the Fourth Circuit has adopted the "strict liability" approach to inadvertent disclosures of attorney-client privileged information,[25] this court has observed that the issue of inadvertent disclosure has not expressly been addressed by the

---

§ 501.02[5][k][v] at 501–54 (8th ed.2002); *citing In re Sealed Case*, 877 F.2d 976 (D.C.Cir.1989).

16. Epstein, *supra*, at 310–11.

17. *Id.*

18. *Id.* at 311. A number of district courts within the Fourth Circuit have adopted this approach. *See F.C. Cycles Inc. v. Fila*, 184 F.R.D. 64, 76 (D.Md.1998) ("Of late, however, numerous district courts in this circuit have embraced the balancing test [regarding waiver of attorney-client privilege for inadvertently disclosed material]"); *see also McCafferty's v. The Bank of Glen Burnie*, 179 F.R.D. 163, 167–69. (D.Md.1998) *citing In re Grand Jury Investigation*, 142 F.R.D. 276, 279 (M.D.N.C.1992); *F.D.I.C. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479 (E.D.Va.1991).

19. *F.C. Cycles Int'l, Inc.*, 184 F.R.D. at 76.

20. *In re Grand Jury Proceedings*, 727 F.2d at 1355 (internal citations omitted).

21. *Id.*

22. *Id.* at 1356 (internal citations omitted).

23. *Id.* at 1356; *citing In re Horowitz*, 482 F.2d 72, 82 (2d Cir.1973) (J. Friendly).

24. *Id.* at 1357.

25. Saltzburg et al, *supra*, § 501.02[5][k][v] at 501–54.

Fourth Circuit.[26] The very uncertainty of the Fourth Circuit's position is grounds for proceeding cautiously, because if the *In re Grand Jury Proceedings* case does suggest that the court would take a strict liability approach, the waiver would be broad subject matter waiver, rather than waiver limited to the contents of the disclosed document. *In re Grand Jury Proceedings*, 727 F.2d at 1357. The Fourth Circuit's subsequent case, *United States v. Pollard (In re Marietta)*, 856 F.2d 619 (4th Cir.1988) is further grounds for caution with respect to the inadvertent waiver doctrine.[27]

In *Martin Marietta*, the Fourth Circuit again examined the attorney-client privilege and its waiver in the context of a criminal case. 856 F.2d 619 (4th Cir.1988). The defendant in a mail fraud case sought to subpoena production from his employer certain documents that it had disclosed previously to the United States to settle criminal and administrative cases against it. *Id.* at 620. The employer resisted the subpoena arguing that the information sought was protected by the attorney-client privilege and work product doctrine. *Id.* The defendant responded that the prior disclosure waived the privilege and protection. *Id.* The Fourth Circuit examined whether the employer's prior production impliedly waived the privilege and protection. *Id.* at 621–23. It stated, relevantly:

> Implied waiver nullifies a privilege when disclosure of a privileged communication has vitiated confidentiality. Unlike express waiver which allocates control of the privilege between parties to the communication, implied waiver allocates control of the privilege between the judicial system

and the party holding the privilege .... Martin Marietta argues for application of a limited implied waiver as to both privileges. Most courts continue to state the rule of implied waiver in absolute form—any disclosure of a confidential communication outside a privileged relationship will waive the privilege as to all information related to the same subject matter. That is commonly referred to as subject matter waiver as opposed to limited waiver for which Martin Marietta argues. However, competing policy concerns, such as facilitating the settlement of litigation, permitting full cooperation among joint defendants, expediting discovery and encouraging voluntary disclosure to regulatory agencies have led courts to carve out exceptions to the purportedly absolute rule of waiver .... The Fourth Circuit has previously rejected the limited waiver concept as to the attorney-client privilege and as to non-opinion work-product. We have embraced the limited waiver concept as to opinion work-product.

*Id.* at 623.

The lessons taught by the *In re Grand Jury Proceedings* and *Martin Marietta* cases are sobering to those with cases pending in the Fourth Circuit when considering the procedures suggested by the proposed changes to the rules of civil procedure to deal with the burdens and expense of privilege review related to discovery of voluminous electronically stored information. Both these cases were decided more than fifteen years ago, long before the problems associated with computer generated and stored information

---

26. *F.C. Cycles Int'l Inc.*, 184 F.R.D. at 76 ("The defendant asserts that the United States Court of Appeals for the Fourth Circuit has adopted the middle-ground approach [to inadvertent waiver of attorney-client privileged material]. The Court has not expressly addressed this issue.").

27. It should be noted that Fed.R.Evid. 501 provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." Thus, for diversity cases in this district in which Maryland law governs, state privilege law, not federal, governs. Maryland has adopted the "balancing ap-

proach" to inadvertent waiver of the attorney-client privilege. *Elkton Care Center Assocs. Ltd. P'Ship v. Quality Care Mgmt.*, 145 Md.App. 532, 805 A.2d 1177 (2002). *See also F.H. Chase, Inc. v. Clark/Gilford*, 341 F.Supp.2d 562, 562 (D.Md. 2004) (applying the balancing test of *Elkton Care Center* in diversity contract case in federal court). Counsel must be cautious to make sure which standard governs in their cases, and in cases asserting both federal and state claims, both federal and state privilege standards could be applicable, which could result in the paradoxical situation in which a producing party's conduct could constitute waiver of the attorney-client privilege for the federal claims, but not for the state claims.

were on anyone's radar scope. Although both were decided in the context of grand jury investigations in criminal cases, neither confined its ruling to application of the privilege in that context, but, rather, spoke broadly in terms that would apply equally to civil cases. Further, they clearly express a very strict interpretation of the attorney-client privilege, and an unambiguous willingness narrowly to confine it to its essential function—preserving communications intended to be kept confidential. Finally, both cases take an unforgiving view of the results of its waiver—subject matter waiver.

This case thus highlights an unavoidable clash of important policies. On the one hand is the substantive law narrowly confining the attorney-client privilege to its essential purpose, with subject-matter waiver as the price for unprotected disclosure. On the other is the distinct trend towards limiting the nature and amount of discovery to the needs of the particular case, given the issues in the case, the importance of the facts sought to be discovered, and the resources of the parties, such as embodied in Fed.R.Civ.P. 26(b)(2), and the proposed changes to the rules of civil procedure relating to discovery of electronically stored information. In attempting to resolve this clash, it is important to have a clear appreciation of what is at stake. This requires an awareness of the enormous costs that would accompany a requirement that in all civil cases the production of electronically stored information could not be accomplished until after a comprehensive privilege review and particularized assertion of privilege and work product claims.

The commentary to the proposed changes to Rules 16 and 26, quoted above, speak of the costs associated with discovery of electronically stored information in general, and privilege review prior to production specifically: "The volume of the information and the forms in which it is stored make privilege determinations more difficult and privilege review correspondingly more expensive and time-consuming, yet less likely to detect all privileged information." [28] One does not

have to look very hard to find specific cases that provide a factual basis for this concern. In *Rowe Entm't, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y.2002) the court was faced with motions by defendants that sought to be protected from the burden and expense of producing e-mail that had been requested by the plaintiffs during discovery in a civil case. One defendant supported its motion with an estimate from a computer consultant that it would cost $395,944 to select, catalogue, restore, and process a limited sampling of the e-mails sought, and $9,750,000 to do the same for all e-mail requested. *Rowe Entm't*, 205 F.R.D. at 425. Another defendant produced cost estimates ranging from $43,110 to $84,060 to produce requested e-mail, with an estimated cost of $247,000 to review the e-mail for privilege and work-product prior to production. *Id.* A third estimated that it would take more than two years to retrieve and catalogue the e-mails requested by the plaintiff at a cost of $395,000, with an additional cost of $120,000 to conduct privilege review— which would take a full-time employee two years to complete. *Id.* at 426. In another case, *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y.2003) the defendant submitted cost estimates in support of its request to shift the production costs to the plaintiff of $165,954.67 to search for and restore responsive electronic information, with an additional estimated expense of $107,694.72 for attorney and paralegal review costs.

Those who bear the administrative and financial costs of responding to voluminous discovery requests for electronically stored information are mindful of the potential burden and expense. A publication of the Association for Information Systems (AIS) has observed:

Broadly defined, e-evidence is electronically-stored information on any type of computer device that can be used as evidence in a legal action. Since e-mail can provide especially devastating evidence, the use of e-evidence is increasing. In a survey of

---

**28.** Report of the Judicial Conference on Rules of Practice and Procedure to the Chief Justice of the United States, *supra*, at 27, n. 3.

1,100 U.S. Companies conducted by the American Management Association and the ePolicy Institute, 14% of respondents said they were ordered by a court or regulator to produce employee e-mail in 2002, which was up from 9% in 2001.[29]

The same study estimates that "discovery of e-mail occurs in nearly 100% of federal civil ... cases and major employment disputes,"[30] with the following impact on the responding party:

> Responding to a discovery request for a corporation's internal e-mail may seem simple and straightforward to the courts or lawyers. However, a company served with a request to produce e-mail messages faces time consuming and expensive processes. The cost and complexity depends on the volume of e-records, how they are organized, and their accessibility. The cost of responding to a discovery request can be in the millions of dollars if several years' worth of archived e-mail and files must be located, restored, sorted through and cleansed to remove non-relevant confidential material .... Those costs are often in the millions of dollars.[31]

Importantly, the foregoing costs must be borne before the lawyers begin the job of privilege review. With regard to the process of assembling electronic information responsive to discovery requests, an entire industry of consultants has developed to provide services to litigants.[32] Some consultants are nothing short of giddy in their projections of the expected fees to be earned from these services. For example, the reports of a survey conducted by a "digital discovery" consultant of users of consulting services led it to conclude "[b]ased on our research, we

estimate that 2004 domestic commercial electronic discovery revenues were in the range of $832 million—a 94 percent increase from 2003."[33] Projections for the next three years were equally attention grabbing: 2005: $1.282 billion; 2006: $1.923 billion; and 2007: $2.865 billion.[34] It also is instructive to look back to see how quickly these costs have grown in such a short time. Estimated total revenues earned by consulting companies providing services to litigants regarding discovery of electronic information was:

| | |
|---|---|
| 1999: | $40 million |
| 2000: | $70 million |
| 2001: | $150 million |
| 2002: | $270 million |
| 2003: | $430 million [35] |

■ Despite the uncertainty regarding which approach to inadvertent disclosure of attorney-client privileged material would be adopted by the Fourth Circuit, there is a viable method of dealing with the practical challenges to privilege review of electronically stored information without running an unacceptable risk of subject-matter waiver. It lies with the courts issuing scheduling orders under Fed.R.Civ.P. 16, protective orders under Fed.R.Civ.P. 26(c), or discovery management orders under Fed.R.Civ.P. 26(b)(2) that incorporate procedures under which electronic records will be produced without waiving privilege or work product that the courts have determined to be reasonable given the nature of the case, and that have been agreed to by the parties. This practice, already commonly followed in cases where discovery of electronic records is anticipated, is specifically encouraged by the proposed rule changes to the discovery rules now under

**29.** Linda Volonino, *Electronic Evidence and Computer Forensics*, 12 Communications of the Association for Information Systems 27, October 2003, at 7, available at http://cais.isworld.org/articles/12–27/article.pdf.

**30.** *Id.* at 11.

**31.** *Id.* at 14.

**32.** "A cottage industry of companies assisting with the production and retrieval of electronic data and litigation has recently arisen." T. Delaney, *E–Mail Discovery: The Duties, Danger and Expense*, 46 Fed. Lawyer 42, 44 (Jan.1999).

**33.** Socha–Gelbmann 2005 Electronic Discovery Survey Results, http://www.sochaconsulting.com/2005surveyresults.htm.

**34.** *Id.*

**35.** Socha–Gelbmann 2004 Electronic Discovery Survey Results, *http://www.sochaconsulting.com/Publications/DDEE05.03.pdf;* Socha–Gelbmann 2004 Electronic Discovery Survey Results, http://www.sochaconsulting.c om/Publications/LawTechnologyNewsÄrticle8.04.pdf.

review by the Supreme Court.[36] As will be seen, it is essential to the success of this approach in avoiding waiver that the production of inadvertently produced privileged electronic data must be at the compulsion of the court, rather than solely by the voluntary act of the producing party, and that the procedures agreed to by the parties and ordered by the court demonstrate that reasonable measures were taken to protect against waiver of privilege and work product protection. To appreciate how the process must work, one must understand Fed.R.Evid. 501, and the doctrine of compelled disclosure encompassed by Proposed, but not enacted, Rule of Evidence 512. Fed.R.Evid. 501 states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States *in the light of reason and experience*. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law. (Emphasis added).

Therefore, it "authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.'" *Jaffee v. Redmond,* 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). And, because "'the common law is not immutable, but flexible, and by its own principles adapts itself to varying conditions,'" *Id.* (internal citations omitted), Rule 501 "did not freeze the law governing the privileges of witnesses in federal trials at a particular point in our history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Id.* at 9, 116 S.Ct. 1923.

Notably, when Congress elected to adopt the "general mandates" of Rule 501, it rejected a series of specific privilege rules that had been "formulated by the Judicial Conference Advisory Committee on the Rules of Evidence and approved by the Judicial Conference of the United States and by [the Supreme] Court." *Id.* at n. 7, 116 S.Ct. 1923. Many learned commentators have observed that, because the proposed evidence rules, often referred to as "standards," were approved by the Judicial Conference and the Supreme Court, they evidence the common law of privilege and therefore may be applied under Rule 501 if reason and experience make such application appropriate. *See* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 512.02 (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997 ("Supreme Court Standards are not part of the Federal Rules of Evidence. The Supreme Court originally proposed the Standards as Rules, but Congress struck them before enacting the other proposed rules into law. However, Supreme Court Standard 512 retains considerable utility as a guide to the federal common law referred to in Rule 501."); Graham, Handbook of Federal Evidence § 501.1 (5th ed. 2001) ("While the nine rules recognizing specific privileges as drafted by the Advisory Committee and prescribed by the Supreme Court do not have the force of law, they do provide standards reflective of the 'reason and experience' mentioned in Rule 501.) These nine specific provisions relating to privilege, ..., are consistent and co-extensive with privileges recognized by the federal common law. The remaining proposed rules, now Standards, deal with procedural aspects governing all privileges, no matter their source of origin .... Standard 512 provides an exception for disclosure where compelled or made without opportunity to claim."); Saltzburg, et al., Federal Rules of Evidence Manual § 501.02[3] ("While common-law development is now mandated, the question remains whether the Federal Courts in developing the law of privileges should consider the proposed-but-rejected privileges as either persuasive or controlling. Most Courts have held that the recommendations of the Adviso-

---

**36.** *Supra* n. 3 and n. 4.

ry Committee and the Supreme Court are a useful guide, though not controlling in determining the existence and scope of a federal privilege.").

As noted in the above cited authorities, one of the proposed rules, Standard 512, is especially relevant to this case. It states: "[e]vidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if the disclosure was (a) compelled erroneously or (b) made without opportunity to claim the privilege." Proposed Rule 512, 56 F.R.D. at 259. The commentary to proposed Rule 512 recognized that it cannot undo the damage that inadvertent disclosure of privileged information causes, but it can contain it. "Confidentiality, once destroyed, is not susceptible of restoration, yet some measures of repair may be accomplished by preventing uses of the evidence against the holder of the privilege. The remedy of exclusion is therefore made available when the earlier disclosure was compelled erroneously or without opportunity to claim the privilege." *Id.*

Federal courts also have referenced Proposed Rule 512 in contexts that are relevant to this case, to hold that a party that is compelled to produce privileged material, or erroneously produces it, does not waive the privilege. In *Transamerica Computer Co. v. IBM,* 573 F.2d 646 (9th Cir.1978), the Ninth Circuit held that IBM had not waived its privilege claims to records that erroneously had been produced in prior litigation involving different parties, because the production was in response to an accelerated discovery schedule that the trial court had imposed, and the disclosures had been unintentional. Notably, the court observed that in the earlier litigation, IBM had produced 17 million pages of documents during a court ordered production schedule that had "dramatically accelerated the document inspection program." *Transamerica,* 573 F.2d at 648. The court noted that during this demanding production schedule, IBM had undertaken "herculean" efforts to review documents for privilege. *Id.* at 648–49. Therefore, it had not been guilty of any want of diligence. Of greater importance, however, was the fact that the trial judge had ruled that "the inad-

vertent production of allegedly privileged material by either party would not constitute a waiver of that party's right to claim the attorney-client privilege, provided only that the party disclaiming waiver had continued to employ procedures reasonably designed to screen out privileged material." *Id.* at 649–50.

In concluding that IBM had not waived its privilege claims by producing the documents in the earlier litigation, and therefore could not be compelled by *Transamerica* in the subsequent litigation to produce it, the Ninth Circuit declined to view the issue solely as one of inadvertent disclosure, but rather focused on the importance of the court's compulsion of the production of the documents under conditions that unavoidably resulted in disclosure of some privileged material. The court observed:

> We do not decide, however, whether this sort of 'inadvertent' disclosure constitutes a waiver of the attorney-client privilege, for we believe that this case is properly decided upon the basis of a legal principle upon which the parties are in complete accord. Specifically, IBM asserts, and [Transamerica] concedes, that a party does not waive the attorney-client privilege for documents that he is *compelled* to produce.

*Id.* at 650–51. In reaching its decision, the Ninth Circuit relied on proposed Rule 512: "Proposed Rule 512 is perhaps even more on point. This proposed rule would have prohibited the use of any privileged matter if its disclosure had been 'compelled erroneously' or had been 'made without opportunity to claim the privilege.' It is our belief that under the specific circumstances of the accelerated discovery proceedings in the CDC litigation, IBM's inadvertent production there of some privileged documents does not constitute a waiver of the privilege protecting the production of those documents, for that production was 'made without (adequate) opportunity to claim the privilege.' " *Id.* at 651.

Also central to the court's ruling was its recognition that the production of some privileged material by IBM had occurred as a result of the trial court's discovery order:

> As the judicial officer directly in charge of supervising the discovery proceedings in

that litigation ... [the trial judge] was in an ideal position to determine whether the timetable he himself had imposed was so stringent that, as a practical matter, it effectively denied IBM the opportunity to claim the attorney-client privilege for documents it was producing for inspection by CDC. TCC acknowledges that waiver cannot be directly compelled, and ... [the judge's] rulings recognize and we so hold, that neither can it be indirectly compelled.

*Id.* at 652.

Finally, the court noted that the trial judge had further issued a ruling "explicitly protecting and preserving all claims of privilege, provided only that the parties wishing to preserve privilege had engaged in suitable screening techniques." *Id.*

Subsequent courts have applied the ruling of *Transamerica* or independently referred to Proposed Rule 512 in instances where a party had been compelled to produce privileged material erroneously, or without adequate opportunity to review it for privilege. *Sangre De Cristo Community Mental Health Serv., Inc. v. United States,* 723 F.2d 1461, 1466 (10th Cir.1983) ("production of privileged documents by an attorney under court order does not necessarily constitute a waiver of the privilege," *citing* Proposed Rule 512, "[a]lthough Congress did not enact rule 512, it still has utility as a standard of law on the privileges that should be applied in federal courts." (internal citations omitted)); *Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 753 F.Supp. 936, 938, n. 4 (S.D.Fla. 1991) (*citing Transamerica*); and *Little v. Brown & Williamson Tobacco Corp.,* Nos. 2:98–1879–23 and 2:98–3235–23, 1999 WL 33591437, at *3 (D.S.C. Oct.25, 1999) (noting that Proposed Rule 512 may have utility in determining federal common law of privilege); *Amway Corp. v. Procter & Gamble Co.,* No. 1:98–CV–726, 2001 WL 1818698, at *2 (W.D.Mich. April 3, 2001) (noting court decisions holding that privilege is not lost if disclosure was compelled erroneously or if

holder did not have opportunity to assert privilege, citing treatises, case law) [37].

The *Transamerica* case and those that have followed it would allow parties that have entered into an agreement to preserve privilege claims with respect to production of electronically stored information to avoid subsequent claims by third parties that the production waived the privilege, provided: (a) the party claiming the privilege took reasonable steps given the volume of electronically stored data to be reviewed, the time permitted in the scheduling order to do so, and the resources of the producing party; (b) the producing party took reasonable steps to assert promptly the privilege once it learned that some privileged information inadvertently had been disclosed, despite the exercise of reasonable measures to screen for privilege and, importantly; (c) the production had been compelled by court order that was issued after the court's independent evaluation of the scope of electronic discovery permitted, the reasonableness of the procedures the producing party took to screen out privileged material or assert post-production claims upon discovery of inadvertent production of privileged information, and the amount of time that the court allowed the producing party to spend on the production. Thus, the *Transamerica* case provides a method to meet the goals of the proposed changes to the Federal Rules of Civil Procedure regarding preservation of privilege claims during production of electronically stored material within the context of existing substantive privilege law, which the proposed rule changes cannot trump.

And, even the D.C. Circuit, one of the staunchest adherents to the "strict accountability" approach to waiver of privileged material, has recognized in an analogous context that production of privileged information under circumstances where the party asserting the privilege is unable effectively to prevent the disclosures or to assert the privilege, does not result in waiver.

---

**37.** No decision from the Fourth Circuit has been found discussing whether Proposed Rule 512 constitutes the "common law" of privilege under Rule 501. However, in *Farnsworth Cannon v. Grimes,* 635 F.2d 268, 270–71, n. 8 (4th Cir. 1980), the Fourth Circuit did recognize that proposed privilege rule 509(e) (state secrets privilege) was part of the common law of privilege despite the fact that it had not been adopted.

In *Securities and Exchange Commission v. Lavin,* 111 F.3d 921 (D.C.Cir.1997), the D.C. Circuit examined whether the production of tapes of communications between a security trader and his wife, assertedly protected by the marital communications privilege, by the husband's employer that had retained copies of the tapes, waived the privilege. Importantly, the court recognized that the issue involved more than the concept of inadvertent production of privileged material by the holder of the privilege or its attorney. Rather, the court observed:

the question of the Lavins' alleged waiver arises in an unusual context, different from that of any of the cases on which the district court and the parties rely. The Lavins assert the privilege with regard to communications, the physical manifestations of which belong to a third party, Mr. Lavin's employer. Consequently, the cases cited that discuss implied waiver when the holder of the privilege or his attorney is in possession of the materials at issue and fails to take adequate precautions to maintain their confidentiality, i.e. negligent or inadvertent disclosures, offer limited guidance on whether disclosure by third parties over whom the holder of the privilege has virtually no control ... may nonetheless be held to constitute waiver. *In cases of involuntary disclosures, at least one court has held that waiver occurs only when the holder has failed to take reasonable steps to reclaim the protected material.*

*Lavin,* 111 F.3d at 929–30 (emphasis added). The D.C. Circuit adopted the following language from a Ninth Circuit opinion, *United States v. de la Jara,* 973 F.2d 746 (9th Cir. 1992):

[W]hen the disclosure of privileged material is involuntary, we will find the privilege preserved if the privilege holder has made efforts 'reasonably designed' to protect and preserve the privilege. Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.

*Lavin,* 111 F.3d at 930, *citing de la Jara,* 973 F.2d at 749. The *Lavin* court further explained its ruling in language that is equally instructive to this case:

In our view the Ninth Circuit's standard with regard to involuntary disclosures strikes the proper balance between the conflicting policies of facilitating truth-seeking by construing privileges strictly and, at the same time, fairly and adequately 'protecting the privacy of marriage and encouraging open and frank communications .... *In light of the modern regulatory age and technological advances, moreover, such an approach is necessary precisely because the ability to protect against all disclosures is becoming increasingly elusive ... Unless communications remain privileged as long as the holder has acted reasonably in attempting to protect them, involuntary disclosures by third parties may render illusory the privilege's guarantee of privacy.*

*Lavin,* 111 F.3d at 930 (emphasis added) (internal citations omitted).

This observation from one of the strongest proponents of the strict accountability doctrine of privilege waiver is significant. There is little conceptual difference between the nonconsensual disclosure of privileged material by a third party over whom the privilege holder has no control, and involuntary production by a party ordered to produce voluminous materials by court order that requires disclosure within a time frame that, despite reasonable screening, prevents unrestricted opportunity to review for privilege. In either instance, provided the holder of the privilege has taken all reasonable measures under the circumstances to prevent disclosure, but was prevented from doing so by matters beyond his control, a finding of waiver would be unfair and improper. Further, the D.C. Circuit recognized what is painfully apparent in a world where almost all writings are generated and stored electronically, and far more widely disseminated than in the days of "paper documents"—technological advances have made it increasingly difficult to protect against all involuntary disclosures. If, indeed, the common law of privilege is not frozen in antiquity, but rather is flexible and adaptable to changing

circumstances,[38] then it must be elastic enough to permit reasonable measures to facilitate production of voluminous electronically stored information during discovery without imposing on the parties unreasonable burdens on their human and fiscal resources. The unavoidable truth is that it is no longer remarkable that electronic document discovery may encompass hundreds of thousands, if not millions, of electronic records that are potentially discoverable under Rule 26(b)(1). In this environment, to insist in every case upon "old world" record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation, and mark a dramatic retreat from the commendable efforts since the adoption of Rule 26(b)(2) to tailor the methods and costs of discovery to fit the case at hand. And, of equal importance, a failure to adapt to current "real world" discovery realities will unacceptably lengthen pretrial discovery, because courts cannot insist upon such painstaking and costly review unless they are willing to allow enough time to do so reasonably. It is unlikely that courts are going to embrace the notion of years-long timetables to allow parties to assemble and review voluminous electronic information prior to production during discovery.

■ The foregoing discussion of Rule 501, Proposed Rule 512, and the *Transamerica* and *Lavin* cases teach valuable lessons to apply to the challenges presented in this, and most cases, regarding the discovery of electronically stored information. First, to the extent that parties already are negotiating "non-waiver" electronic records production agreements, a practice encouraged by the proposed changes to Rule 16(f), they would be unwise to assume that such agreements will excuse them from undertaking any pre-production privilege review, or doing less of a pre-production review than is reasonable under the circumstances. In circuits that have adopted the "strict waiver" approach to inadvertent production, such an agreement would be fatal. And, even in those jurisdictions that have adopted the more lenient "balancing test," the producing party still must show that reasonable measures were taken to screen for privileged information.[39] The better approach is to assume that complete pre-production privilege review is required, unless it can be demonstrated with particularity that it would be unduly burdensome or expensive to do so.

■ The cost-benefit balancing factors listed in Rule 26(b)(2) provide useful analytical tools to enable a producing party to marshal the specific facts that would justify less than full pre-production privilege review. The amount of discovery of electronically stored information that should be permitted in a particular case will be a function of the issues in the litigation, the resources of the parties, whether the discovery sought is available from alternative sources that are less burdensome, and the importance of the evidence sought to be discovered by the requesting party to its ability to prove its claims. As this court noted in *Thompson v.*

---

38. *Jaffee,* 518 U.S. at 8, 116 S.Ct. 1923.

39. A casual reading of the proposed changes to Rules 16 and 26 and their accompanying commentary, without evaluation of the governing substantive law of privilege waiver, could lead counsel to conclude that the proposed rules permit them to, with a wink and a nod, forego reasonable pre-production review altogether, or to do only a cursory screening. This would be a mistake. Reviewing appellate courts are unlikely to accept the doctrine of compelled disclosure under Proposed Rule 512 if it is offered to justify transparently inadequate pre– and post-production privilege review and assertion. If the producing party had adequate opportunity to do full pre-production review, or greater privilege review than was done, but, through sloppiness or want of diligence failed to do so, the reviewing court is unlikely to find present the level of compulsion necessary to immunize the production from waiving privilege. Similarly, absent any clear signal from the appellate courts that they should do otherwise, district courts called upon to "bless" the production procedures agreed upon by counsel with a court order should independently satisfy themselves that full privilege review reasonably cannot be accomplished within the amount of time court allowing for the production. The court also should satisfy itself that the procedures agreed upon by counsel regarding privilege production are in fact reasonable and that more could not be accomplished within the production period given the scope of electronic records production permitted by the court.

*HUD*, 219 F.R.D. 93 (D.Md.2003), courts have nearly limitless ability under Rule 26(b)(2) to fashion reasonable limits to potentially burdensome discovery requests, but the parties must get beyond the posturing that all too often takes place and provide the court with particularized information and reasonable suggestions how to do so.

■ In this case the BCPD did file an affidavit intended to particularize the unreasonable burden that would result from producing all of the records sought by the Plaintiffs in their Rule 34 requests. However, it was less complete than it should have been. It did identify the limited number of information technology personnel available to conduct the search for electronic records, and the competing demands on their services within the police department, but it failed to estimate the number of hours that would be required for them to conduct the requested review, or to sufficiently demonstrate how this would impact adversely the fiscal and operational capabilities of the police department. A party that seeks an order from the court that will allow it to lessen the burden of responding to allegedly burdensome electronic records discovery bears the burden of particularly demonstrating that burden and of providing suggested alternatives that reasonably accommodate the requesting party's legitimate discovery needs.

■ Second, as this case graphically demonstrates, it is no longer acceptable for the parties to defer good faith discussion of how to approach discovery of electronic records until they have complied with the briefing schedule in Local Rule 104.8. Rather, as the proposed changes to Rule 16(f) make clear, counsel have a duty to take the initiative in meeting and conferring to plan for appropriate discovery of electronically stored information at the commencement of any case in which electronic records will be sought. In the absence of any guidance in the court's scheduling order, or in the local rules of court, the parties are not without resources that will assist them in determining what to discuss at their meeting. Indeed, the newly revised Civil Discovery Standards for the American Bar Association Section on Litigation[40] contain detailed information about the issues that the parties should discus in their effort to agree upon an electronic records discovery plan. At a minimum, they should discuss: the type of information technology systems in use and the persons most knowledgeable in their operation; preservation of electronically stored information that may be relevant to the litigation; the scope of the electronic records sought (i.e. e-mail, voice mail, archived data, back-up or disaster recovery data, laptops, personal computers, PDA's, deleted data) the format in which production will occur (will records be produced in "native" or searchable format, or image only; is metadata sought); whether the requesting party seeks to conduct any testing or sampling of the producing party's IT system; the burdens and expenses that the producing party will face based on the Rule 26(b)(2) factors, and how they may be reduced (i.e. limiting the time period for which discovery is sought, limiting the amount of hours the producing party must spend searching, compiling and reviewing electronic records, using sampling to search, rather than searching all records, shifting to the producing party some of the production costs); the amount of pre-production privilege review that is reasonable for the producing party to undertake, and measures to preserve post-production assertion of privilege within a reasonable time; and any protective orders or confidentiality orders that should be in place regarding who may have access to information that is produced.

■ It cannot be emphasized enough that the goal of the meeting to discuss discovery is to reach an agreement that then can be proposed to the court. The days when the requesting party can expect to "get it all" and the producing party to produce whatever they feel like producing are long gone. In many cases, such as employment discrimination cases or civil rights cases, electronic discovery is not played on a level field. The plaintiff typically has relatively few electronically stored records, while the defendant often has an immense volume of it. In such cases, it is incumbent upon the plaintiff to have reasonable expectations as to what should be produced by the defendant.

---

**40.** *American Bar Association Civil Discovery Standards* 29, amend. August 2004.

In this case, the Plaintiffs filed voluminous and detailed Rule 33 and 34 discovery requests that clearly identified their interest in discovering electronically stored information. The Defendants' immediate response should have been to invite the Plaintiffs to meet to discuss a reasonable discovery plan. Instead, objections first were raised, many of them boilerplate and conclusory, in the Defendants' answers to the discovery requests. The Plaintiffs responded with multiple written communications outlining their objections to the Defendants responses. When impasse was not overcome, the Plaintiffs followed the procedures in Local Rule 104.8 and prepared and served a motion to compel. Only when that motion was fully briefed was it filed with the court. An expedited hearing was held, but even so, months had passed from the commencement of discovery while the dispute festered. Such delay is no longer acceptable, and it is the duty of the parties to initiate the negotiation process if the court has not ordered it. As I ordered during the hearing, the meeting that should have occurred months ago will be held within 30 days. A follow-up hearing with the court will be scheduled at which time a reasonable electronic discovery plan will be ordered.

One of the issues the parties were ordered to discuss was the nature of privilege review the Defendant would undertake, both pre- and post-production. The Defendants were advised that they bore the burden of demonstrating with particularity the need for less than full pre-production privilege review, as well as of proposing reasonable alternatives. I advised the parties that at the follow-up hearings, I would issue an order that compelled production of electronic records within a specific time that is reasonable. I also stated that I would independently determine, using the Rule 26(b)(2) factors, the amount of electronic discovery that would be permitted; whether less than full privilege review was reasonable given the extent of electronic discovery allowed and the time to do so and, if

full privilege review was not feasible, whether the procedures agreed to by counsel are reasonable. If so, I will issue an order approving them that includes language that compliance with the approved procedures will not result in the waiver of any privilege or work product claim for any inadvertently produced privileged material. As I stated during the hearing, the issuance of such an order is essential to protecting against subject matter waiver of attorney-client privileged or work product protected information. In this regard I am persuaded that the holding in the *Transamerica* case is correct, and that Proposed Rule 512 is part of the common law of privilege that may be recognized by this court under Rule 501, because both reason and experience militate in favor of its application under the facts of this case. If I eventually am proved wrong, then the Defendants still will be able to argue that their production of privileged information was under the erroneous belief that this order immunized them from waiver, as Proposed Rule 512 speaks both to production compelled without adequate opportunity to raise privilege claims, as well as erroneous production of privileged information.[41]

It is so ordered.

---

**41.** 24 Charles Alan Wright & Kenneth W. Graham, *Federal Rules of Evidence*, Ch. 6 § 5507, 579 and 579 n. 122 (1986). Thus, even the treatise most openly critical of trial courts' approval of agreements between parties to produce discovery without full privilege review acknowledges that the producing party who was subject to such an order has a viable defense under the concept of "erroneous production" against a subsequent opposing party that claims that the privilege was waived.